decisions in which such conditions are described. Presumably, the legislature did not intend to abrogate the law, which, under the decisions cited in the opinion of the learned judge below, was applicable to such a state of facts as is set forth in the original and supplemental answers. The material clause of the supplemental answer is quoted in his opinion, and in connection with that should be read the explicit averment of the original answer that the plaintiff took, received and acquired the note upon the credit and as the undertaking of the Catasauqua Rubber Company, and consented to, and acquiesced in, and recognized the indorsement thereupon as that of the said company through its president, the defendant. The fact that the construction contended for by the appellee's counsel would give the instrument no additional value by reason of the indorsement would properly be considered in determining as to the truth of the appellee's averments. Upon the trial of the case it would be a reason for scrutinizing the testimony with care. But whatever doubt may be created as to the defendant's allegation by this construction, it would not be sufficient to warrant us in holding that the affidavits taken together are insufficient to prevent summary judgment.

Appeal dismissed at the appellant's costs, without prejudice, etc.

---

## Stiles, Appellant, *v.* Easton National Bank.

*Will—Legacy—Trusts and trustees—Vested and contingent estates.*

Testator by his will gave a life estate in certain stocks to his son, and appointed a trustee and a guardian for him. By a codicil testator provided as follows: "That the said trustee and guardian shall upon my said son having completed his collegiate and professional studies, and upon his being admitted to the lawful practice of any of the liberal professions, in the event of his selecting such profession as his calling in life, or upon his completion of his term of apprenticeship to a mechanical trade or art, in the event of his selecting such as his calling in life, or upon the completion of his preparatory term of service as a merchant, in the event of his selecting the calling of a merchant as his calling in life, but in no event before he shall have arrived at the age of twenty-one years, deliver over to my said son, absolutely, the following named shares or stocks or the residue and remainder of them that may be

## 58 STILES, Appellant, *v.* EASTON NATIONAL BANK.

left after the full performance of the charges and trusts mentioned, described in the aforesaid will concerning the disposition of the said stock or shares of incorporated companies in order to defray the educational expenses of my said son; all the said enumerated stocks or shares of stock,. and none other shall be the funds which is to vest in the said guardian and trustee for the benefit of my said son for performance of the said charges and trusts and according to the provisions and directions of this codicil shall vest absolutely in said son and his lawful issue. In the event of my said son dying before he arrives at the age of twenty-one years, or in the event of his dying without leaving lawful issue, then and in that case all the estate, right and interest that should have vested or did vest in my said son shall revert to. my lawful heirs." After the son reached the age of. twenty-one he borrowed a sum of money from a bank, and his guardian and trustee, with the son's consent and at his request, assigned to the bank as collateral security certain of the stock mentioned in the codicil which stood in the name of the guardian and trustee as such. *Held*, that the stock vested wholly in the son, and that the transfer to the bank was valid.

Argued Dec. 7, 1906. Appeal, No. 233, Oct. T., 1906, by plaintiff, from judgment of C. P. Northampton Co., April T., 1905, No. 7, for defendant non obstante veredicto in case of Harry G. Stiles, Guardian, v. Easton National Bank. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Appeal from judgment of justice of the peace. Before SCOTT, J.

At the trial the court directed a verdict for plaintiff, and the jury thereupon returned a verdict for $67.20. Subsequently on motion for judgment non obstante veredicto, SCOTT, J., filed the following opinion :

There are two rules here for disposition, first, when a verdict was directed for the plaintiff, the question of law was reserved, according to the usual practice, whether there was any evidence in the case which entitled him to recover ; secondly, following the verdict, after a request for binding instructions, motion is made by defendant for judgment upon the undisputed evidence, non obstante veredicto, pursuant to the provisions of the Act of Assembly, April 22, 1905, P. L. 286.

This second rule is predicated upon the proposition that if it

be assumed the plaintiff's proof being mainly documentary and at least undisputed, entitled him at that point either to submit the case, or to demand binding instructions, yet the evidence produced by the defendant, consisting of (1) written documents, (2) admission of record, (3) the testimony by cross-examination of the cestui que trust as the person for whose benefit this suit is prosecuted requires judgment now for him. If the oral evidence came from one, other than a party to the action, the question of his credibility would not be for the court. But the plaintiff has no legal cause of complaint that his sworn admissions are accepted for verity; and the defendant cannot object that his statements ought to pass under consideration by a jury. He is not bound by them, but he cannot assume the facts to be different without evidential proof otherwise; and they stand without impeachment. The whole subject-matter is for the court alone: Dalmas v. Kemble, 215 Pa. 410.

It will be necessary to precede this discussion by some narrative of

### THE FACTS.

1. James Frey of Lehigh county died in April, 1875; his will and codicil were in that same month admitted to probate. The former was executed February 1, 1870; the latter May 17, 1872. Provisions, too elaborate for particular mention here, were made creating a trust fund for the benefit of a natural son, the beneficial plaintiff who was then an infant, and is now thirty-seven years of age. The late Judge ALBRIGHT, then an attorney at law, was appointed trustee and guardian. He assumed the appointed duties and continued his administration until December 15, 1884, then resigned and Dr. A. R. Horne was designated his successor by the orphans' court. He died December 23, 1902, and Mr. Stiles succeeded him.

2. By the terms of the will, "all the stocks and shares in banks, railroad and other incorporated companies," of the testator at his death were to stand in the joint names of his executors and the trustees or their successors, and the net dividends and income paid to the guardian and trustee, who was to expend them as there expressed for the maintenance and education of his ward, this cestqui que trust, except that the sum of $60.00 was to be paid to his mother annually for that purpose

until the son was seven years old. Change was made by. the codicil in these provisions and upon certain conditions, the nature of which must be left for subsequent reference. Bank shares, specifically and definitely mentioned were to be held in trust and then delivered. Among these was enumerated ten shares of the Easton National Bank, dividends upon which are the subject of present dispute.

3. On June 8, 1876, the Easton National Bank transferred these ten shares held by the testator to " William Fry and Solomon Fry, Executors of the last Will and Testament of James Fry, deceased, and Edwin Albright, Guardian and trustee of James Franklin Fry, under said last will in trust for the uses and purposes therein declared," by the issue of a new certificate (No. 935) ; and on the stub of its stock ledger this full title of the holders as given above was noted at length. The interest therein held by the guardian was assigned and set over by him to his successor in the trust (Dr. A. R. Horne) January 29, 1885. The bank then made the following entry on the stock ledger, " December 15, 1884, Edwin Albright on his own petition was discharged by the orphans' court of Lehigh county, Pennsylvania, and Rev. A. R. Horne substituted as guardian of James Franklin Fry, and on notification same was changed on our books."

4. James Franklin Fry, the cestqui que trust, was twenty-one years old on January 18, 1890. Eleven days afterwards (January 29,) he borrowed $500 from the Allentown National Bank upon a promissory note. For this the guardian and trustee, with the ward's knowledge, approval and consent, assigned to it the ten shares of Easton National Bank stock, expressed in writing as absolute but collateral in fact ; executing for the purpose a power of attorney (Ex. 10) witnessed by James Franklin Fry himself, under which the stock was transferred on the books of this defendant by a new certificate issued to the Allentown National Bank, January 30, 1890.   (Ex. 11.) The money thus borrowed was used to purchase vinegar with which he opened business in Philadelphia ; that venture terminated unsuccessfully in about two months.

The Allentown National Bank subsequently declined to carry the loan and renew the note. The money to repay it was then borrowed from the Northampton County National

57 (1907).]          Opinion of Court below.

Bank, for which this stock was again pledged by delivery of the certificate which had been issued to the former; the power of attorney to transfer being executed in blank by R. E. Wright, President of the Allentown National Bank. James Franklin Fry gave for this loan his own note to the order of A. R. Horne which eventually reached payment there February 5, 1896, by a similar note (Ex. 12) providing that the collateral (certificate for the ten shares of Easton National Bank) should be sold at either public or private sale without prior demand or notice upon default in payment of the obligation at maturity; indorsed by A. R. Horne "Pay to the order of Florence S. Miller" from whom the money was then received. This note was not paid, and in 1903, the stock so pledged was sold at public sale in the city of Easton, and by virtue of the aforesaid power of attorney was transferred July 10, in this last mentioned year, on the books of the Easton National Bank to Elizabeth F. Merrick, the present holder.

5. The defendant received notice May 15, 1903, from Harry G. Stiles, of his appointment as successor in the trusts to A. R. Horne, and a demand for the payment of dividends of this stock. Afterwards, and before this suit dividends were declared, amounting to $60.00.

6. James Franklin Fry was six years of age when the testator died. He attended a country school until ten years old; then a preparatory school; entered Muhlenberg college and remained a short time until sixteen or seventeen years of age; started with a course in a business college, and left in two months. He then became clerk in a hardware store for a short time; studied medicine and soon abandoned it for an attempt to learn with a tobacconist how to make cigars; continued there three months. After that came the fruitless effort, as soon as he reached maturity, to establish a vinegar trade in Philadelphia, to which reference has already been made. He was the owner of a news-stand and sold papers and periodicals for nearly a year with a capital of $150, a bartender for several years and finally undertook to work on a farm, at which he has been engaged four years.

### DISCUSSION.

The relevancy to this controversy of the statement of facts

in the last paragraph, is referable to the terms of the testator's codicil, in which he revokes certain provisions of the will, which may be found to be inconsistent with it, and they are as follows :

"Whereas, I did give and bequeath to my said son James Franklin, a life estate in certain stocks, now

\*    \*    \*    \*    \*    \*    \*    \*

"The said trustee and guardian shall upon my said son, James Franklin having completed his collegiate and professional studies and upon his being admitted to the lawful practice of any of the liberal professions, in the event of his selecting such profession, as his calling in life ; or upon his completion of his term of apprenticeship to a mechanical trade or art, in the event of his selecting such as his calling in life, or upon the completion of his preparatory term of service as a merchant, in the event of his selecting the calling of a merchant, as his calling in life ; but in no event before he shall have arrived at the age of twenty-one (21) years, deliver over to my said son James Franklin absolutely, the following named shares of stocks, or the residue and remainder of them that may be left after the full performance of the charges and trusts, mentioned and described in the aforesaid will concerning the disposition of the said stocks or shares of incorporated companies in order to defray the educational expenses of my said son, as follows, to wit:—One Hundred (100) shares of the Allentown National Bank ; Seventeen (17) shares of the Catasauqua National Bank ; Ten (10) shares of the Easton National Bank and Ten (10) shares of the Doylestown National Bank, all the said enumerated stocks or shares of stocks and none other shall be the funds which are to vest in the said Guardian and Trustee for the benefit of my said son James Franklin, for performance of the said charges and trusts and according to the provision and directions of this codicil, shall vest absolutely in said son and his lawful issue.   In the event of my said son James Franklin dying before he arrives at the age of twenty-one years, or in the event of his dying without leaving lawful issue, then in that case all the estate, right and interest that should have vested or did vest in my said son James Franklin, shall revert to my lawful heirs.   Should however my said son, having arrived at the age of twenty-one years, leave a widow surviving him

and no lawful issue, then and in that case the said estate shall be distributed in accordance with the provisions of the intestate laws of the State of Pennsylvania, in so far as relates to the said widow, and the residue and remainder if any there be, shall revert to my legal heirs."

In paragraph " K " of Item 3 in the will it was provided that if the income from the trust fund set apart was insufficient for the appointed purposes, a part of the principal might be used, if an application therefor was first made to the orphans' court and approved.

Under the proofs submitted in the plaintiff's case, if the trust herein created was not terminated when the cestqui que trust arrived at the age of twenty-one years, or if the guardian was not to determine whether he had complied with the conditions, notice of it appeared upon the certificate of the stock now in question and upon the ledger of the bank.   The pledge took no title which it could hold against a bill to compel surrender, and the defendant's transfer agent could not divest that of the trustee or his successor: Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232; Wood's App., 92 Pa. 379; Clemens v. Heckscher, 185 Pa. 476.

Whether responsibility attaches to the bank for permitting the transfer is a different question : Act of May 23, 1874, P. L. 222; Stockton et al. v. Lehigh Coal & Nav. Co., 9 W. N. C. 110; but this suit is for unpaid dividends now retained by it after demand made and the present owner of the certificate has intervened.

The defendant by way of discharge of its prima facie obligation, maintains,

(1) That the codicil vested an absolute estate in the legatee when he became twenty-one years old; that the conditions expressed marked the limitation of time only when possession of the corpus should be delivered into his hands ; and that the trustee was sole judge of their fulfillment.

(2) If it be conceded that those conditions were precedent to the vesting of the estate absolutely in him and dependent upon judicial determination, they have been performed.

Primarily, it may be observed that under the will the certificates for all shares of stock, as evidence of title, were to be held in the joint names of the executor and guardian or their

successors. This was the form in which the certificate for the ten shares of Easton National Bank Stock, now in controversy, was issued to them after the death of the testator.

When Judge Albright resigned from the trust he transferred to Dr. Horne the interest only which he then had in this stock as guardian. The pledge by the latter to the Allentown National Bank, January 29, 1890, with power of attorney, to assign the same was executed by him alone, and upon delivery of this paper to the Easton National Bank, it was treated as passing the whole title, and the next day the certificate was issued to the Allentown National Bank. If the original trust continued as created, no title was vested in the pledgee by the act of one of three joint trustees, and this defendant had knowledge that such authority was absent. It does not appear here whether the executors of the testator had in 1890, fully administered their trust, and been discharged, or no successors appointed. But in the paragraph of the codicil which I have set forth at length, the testator after the enumeration of specific stocks which were to be delivered to the ward under certain circumstances and among which these shares in dispute were included, declared that they "shall be the funds which are to vest in the said guardian and trustee for the benefit," etc. Whatever might be said with respect to other stocks not herein specifically designated, it is not to be doubted, that the guardian alone had separate and exclusive title to the trust fund, in these ten shares of the Easton National Bank, until or unless they vested absolutely in the cestqui que trust.

It cannot be judicially held, under the evidence presented to me, that James Franklin Fry had complied, either on January, 1890 when this certificate was transferred to the Allentown National Bank (or subsequently) with the conditions written in the codicil, if they be precedent to termination of the trust and vesting in him an absolute estate. The last paragraph of my statement of facts needs the addition of but little comment.

The testator intended and so expressed his purpose that there should be admission to a liberal profession or some "completion" in apprenticeship to a mechanical trade or art or preparatory term of service necessary to acquire practical knowledge of a merchant's business. This was also originally

contemplated when the will was made. (Item 3. Par. G.) " He had been only dropping buckets into empty wells and growing old in drawing nothing up."

But if the testator intended the estate to vest absolutely in the ward, at his majority or at any other subsequent period, and the conditions imposed were only limitations to define the time when the securities should be delivered into his corporal possession, the arbiter of that question was the guardian and trustee (Lewin on Trusts, p. 613, Flint's Notes) unless restrained by the prior provision in the will that required application to the court. He exercised his judgment by permitting the ward to make the loan of $500 upon the pledge of this stock in dispute and thus paid over a part of the corpus. He may have had satisfactory proof for such action which is not before me. The cestqui que trust was then of age; the obligations were given by him; the certificate assigned by his consent, and he got the money. If the trustee had declined to comply with a demand of the ward who had then shown that he was entitled to absolute possession of the estate, I do not mean to imply that the court would have been without power, in appropriate proceedings for that purpose, to supervise his discretion and compel delivery of the stock: Stewart et al v. Madden, 153 Pa. 445.

This was not a spendthrift trust, and the beneficiary is sui juris. When there is no further purpose to serve or estates in remainder to protect, even an active trust will be deemed executed, and will not be continued for the mere benefit of a trustee: Ogden's Appeal, 70 Pa. 501, and cases cited.

The essential matter to be determined, therefore, is the character of the interest or estate intended by the codicil for the ward in the stocks particularly enumerated.

If we omit from present consideration recital of the conditions expressed, the language imports that it is vested and absolute. " The said trustee and guardian shall . . . . but in no event before he arrives at the age of twenty-one years, deliver over to my said son James Franklin absolutely the following named shares or shares of stock. . . . All the said enumerated stocks . . . . shall vest in the said guardian and trustee for the benefit of my said son James Franklin for performance of the said charges and trusts according to the provi-

sions and directions of the codicil. (They) shall vest absolutely in said son and his lawful issue." If death occurs before he is twenty-one " or in the event of his dying without leaving lawful issue," then the estate is to revert to the testator's lawful heirs. Where the contingency of death is provided or " death without lawful issue," as the event upon which there is a limitation over, it will be construed to mean that occurrence before the death of the testator, without clear evidence of a different intent: Mickley's App., 92 Pa. 514; Stevenson v. Fox, 125 Pa. 568; Robinson's Est., 149 Pa. 418; Coles et al. v. Ayres, 156 Pa. 197. If the intention in such cases is doubtful the construction is in favor of the first taker, as the primary subject of the testator's bounty: Fitzwater's Appeal, 94 Pa. 141; Jackson's Estate, 179 Pa. 77. The legatee was not a legitimate son and heir, but his paternity was recognized and declared. He was principally, almost entirely, the sole object of these elaborate testamentary provisions. But this does not solve the dispute, for the terms upon which the bequest is predicated are significant. Must the legacy be regarded as contingent? In doubtful cases it will be treated as vested: McClure's Appeal, 72 Pa. 414.

Where the contingency is attached to the legacy itself, so that it cannot take effect unless conditions precedent are performed, it is contingent. In that event it is not material that there is no limitation over; it goes into the residue: Gilliland, Executor, etc., v. Bredin, 63 Pa. 393. If the contingency is annexed to the time of payment, the legacy is vested. This distribution is always subject to be controlled by any clear intention of the testator otherwise. Tested by the application of these principles alone it might possibly be held that the legacy was contingent, and did not vest absolutely. But there is one exception to the rule that when the time is annexed to the gift, and not its payment, it becomes contingent. It is stated thus in 2 Williams on Executors, 1233 " where a testator bequeaths a legacy to a person at a future time, either gives him the intermediate interest (income) or directs it to be applied for his benefit, the court there considers the disposition of the interest to be an indication of the testator's intention that the legatee should at all events have the principal, and on this ground holds such legacies to be vested." Vide

also the cases asserting this proposition in White and Tudor's Lead. Cas. in Equity, vol. 2, p. 306 (6th Eng ed.), notes to Ashbourner v. Macguire.

Where the income is given until the event happens upon which the legacy would become absolute, an immediate gift is presumed, because, as stated by Sir John Leach, Master of the Rolls, in Vawdry v. Geddes, 1 Russ. & Mylne, 203, for the purpose of interest the particular legacy is to be separated from the bulk of the testator's property. This doctrine is accepted in Eldridge v. Eldridge, 63 Mass. 516, and recognized in Lamb v. Lamb, 8 Watts, 184, when the income ad interim goes solely to the legatee and not to him jointly with others; and follows by analogy the line of decision that an indefinite gift of the income without limitation over, invests the beneficiary with title to the corpus. To the strength of these artificial rules and presumptions in construction may be added some other considerations.

The testator appointed by his will the executors and guardian joint trustees of the whole fund. By the codicil he separated the trust estate and designated particular stocks which were to vest in the guardian alone for execution. This separate trust he does not limit over to anybody, if the conditions should not be performed; other disposition is made only upon the ward's death without lawful issue.

The provision in the will for application to the court for authority to convert any part of the corpus for education and maintenance has no relation to the purpose intended by the codicil; is not inconsistent with it, and the testator has provided for delivery of the stocks specifically set apart " or the residue and remainder of them that may be left " after performance of the charges and trusts declared in the will.

If the trustee is invested with the discretion to determine the time when the principal shall be paid over, either expressly or by necessary implication, the character of the estate in the cestqui que trust is not changed : Millard's Appeal, 87 Pa. 457.

When, in such a case, there is no limitation over the only persons interested after the ward passed his minority were the guardian and himself. They together had the whole legal and beneficial interest; and a successor in the trust, if yet un-

executed, under the will, has no legal grievances against the exercise of discretion by his predecessor who delivered absolutely the securities named in the codicil.   I am referred to a decision of Judge TREXLER, in which the plaintiff maintains his present contention is sustained.   I have read in that case the testimony and opinion of the court.   No such question was presented or discussed.   Judgment certainly was entered against the Allentown National Bank for dividends, but the conclusions upon which that judgment was supported I have also here adopted.

Now, November 5, 1906, rule absolute and judgment is directed to be entered for the defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Harry A. Cyphers*, with him *James L. Marsteller*, for appellant.

*Aaron Goldsmith*, with him *Kirkpatrick & Maxwell*, for appellee.

PER CURIAM, February 25, 1907 :

We are of opinion that his case was correctly decided, and that all that need be said in vindication of the judgment is contained in the opinion of the learned judge below.

Judgment affirmed.

---

# Bodine *v.* Wayne Title & Trust Company, Appellant.

*Conveyancers—Negligence—Damages—Searches—Covenant to fence.*

Where a title insurance company agrees as a conveyancer to examine title to land, and see that it is clear and free of all incumbrances, and by a separate contract in writing at a different date it insures the title, and it appears that the company negligently overlooked an incumbrance on the land created by the deed of a former owner, suit may be brought immediately upon the breach by the person injured against the company for the negligent performance of its professional duty as